UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMANTHA STONE, *individually and as parent, natural guardian, and legal representative of her minor children, J.S. and I.S.,*<br><br>        Plaintiffs,<br><br>    v.<br><br>HOLMDEL TOWNSHIP BOARD OF EDUCATION, *et al.,*<br><br>        Defendants. | Civ. No. 25-16869 (GC)(JBD)<br><br>**MEMORANDUM ORDER** |

Before the Court is *pro se* plaintiff Samantha Stone's unopposed motion for miscellaneous relief.  [Dkt. 2.]  Having reviewed the motion, the Court determines that the appointment of *pro bono* counsel to represent plaintiffs' claims in this case is warranted.  For the reasons set forth below, the Court will appoint *pro bono* counsel to represent both Stone and the minor plaintiffs, J.S. and I.S.

## I.    BACKGROUND

On October 23, 2025 Stone initiated this action by filing a *pro se* complaint on her own behalf and on behalf of her two minor children, J.S. and I.S., against the Holmdel Township Board of Education ("the Board"), the Holmdel Township Police Department, the New Jersey Department of Education, the Holmdel Youth Athletic Association ("HYAA"), Superintendent Dr. J. Scott Cascone, Principal William Loughran, Assistant Principal Chantal Simonelli, Officer John Maguire, Eric Swensen, Lauren Jacoby, and several John and Jane Does.  [Dkt. 1.]  On the

same date, Stone also filed a motion seeking a variety of miscellaneous relief. [Dkt. 2.]

Plaintiffs' complaint arises out of alleged race-based bullying, discrimination, and retaliation towards J.S. and I.S. while enrolled at schools within the Holmdel Township School District and during participation in HYAA's youth basketball league during the years 2019 through 2023.  The complaint asserts eleven counts, including several tort claims, causes of action under Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. § 2000d, 42 U.S.C. § 1983, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1-50.  [Dkt. 1] at 15-19.[1]  The complaint does not specify which claims Stone asserts on her own behalf, and which she asserts on behalf of J.S. and/or I.S.

For purposes of this order only, the Court assumes the truth of the factual allegations in plaintiffs' complaint and briefly summarizes the alleged events giving rise to plaintiffs' claims.  Starting in 2019, when J.S. and I.S. were nine and ten years old, respectively, the two began to experience racially targeted bullying. In response to the HYAA and the school taking no action, Stone filed multiple Harassment, Intimidation, and Bullying ("HIB") reports.  School officials ignored her HIB reports until she filed a complaint with the New Jersey Division on Civil Rights.  [Dkt. 1] at 7; [Dkt. 1-4].

---

[1]     Stone also seeks declaratory relief and injunctive relief.  She requests that defendants' conduct be declared unlawful under the First, Fourth, and Fourteenth Amendments of the Constitution, Title VI, § 504 of the Americans with Disabilities Act ("ADA"), and the NJLAD, and that the New Jersey Office of Civil Rights and New Jersey Department of Education be compelled to revise their policies.  [Dkt. 1] at 22-23.

Additional incidents occurred in 2022 against J.S., which included students verbally assaulting J.S. by directing racial slurs towards him.  Stone filed an HIB complaint, but none of the students were disciplined following these events. [Dkt. 1] at 7-8.  Separately, a physical education teacher filed a police report about J.S., which led to no charges, but the school still suspended J.S. for three days. [Dkt. 1-16.]  Another incident involving a student resulted in Stone and J.S. enrolling him in the "Station House Adjustment Program" to avoid criminal charges.  [Dkt. 1] at 8; [Dkt. 1-6].

More incidents followed in 2023, including reporting J.S. to the police and indefinitely suspending him pending a police investigation.  [Dkt. 1-9.]  After an investigation, police found the allegations inconclusive.  [Dkt. 1-9.]  Other alleged events included a school official cursing at J.S., a school official falsely accusing him of stealing and publicly searching him, another school official turning J.S. away when he sought help, and white students sending J.S. racially harmful messages on social media.  [Dkt. 1] at 8-9; [Dkt. 1-7]; [Dkt. 1-8]; [Dkt. 1-11].  Upon learning that the school referred her son to the police, Stone contacted the New Jersey Department of Education and identified her concerns that white students received no consequences for misconduct while her son, a black student, consistently was punished, and that HIB complaints she made were discarded.  [Dkt. 1-9.]

These and other events in the complaint led Stone to bring this action on behalf of herself and her minor children.  The Board, Jacoby, Loughran, Simonelli, Swensen, and Dr. Cascone filed an answer to the complaint on November 25, 2025.

3

[Dkt. 9.][2]  The Court held a Rule 16 conference on January 27, 2026.  [Dkt. 24.]
Stone appeared during that conference, and the Court, considering her motion for
miscellaneous relief, inquired whether she had sought counsel to represent herself
and her minor children.  Stone indicated that she previously had been represented
by counsel, but was no longer represented.  Paragraph 42 of the complaint explains
that her prior counsel withdrew from representing plaintiffs.  [Dkt. 1] at 13.  When
Stone was unable to secure substitute counsel, she proceeded *pro se*.  [Dkt. 1] at 13.

During the Rule 16 conference, the Court expressed doubt that Stone, a non-
attorney, could represent her two children *pro se*.  The Court now formally
addresses Stone's motion for miscellaneous relief which, among other things,
requests preservation of the minor plaintiffs' claims through the appointment of
qualified counsel or a guardian ad litem pursuant to Federal Rule of Civil
Procedure 17(c)(2).  [Dkt. 2.]

## II.    DISCUSSION

### A.    Federal Rule of Civil Procedure 17(c)

Because J.S. and I.S. are minors, this Court first addresses whether their
mother, Stone, may represent them *pro se*.  Under Rule 17(c), four categories of
parties may bring or defend an action on behalf of a minor: (1) a general guardian;
(2) a committee; (3) a conservator; or (4) a "like fiduciary."  Fed. R. Civ. P. 17(c)(1).

---

[2]    The Court notes that the New Jersey Department of Education and the
Holmdel Township Police Department and Officer John Maguire filed separate
motions to dismiss the plaintiffs' complaint on December 10 and 16, 2025.
[Dkts. 11, 13.]  Stone has opposed both motions and defendants have filed replies.
[Dkts. 16, 17, 21, 22.]

There is no question that Stone, as J.S. and I.S.'s parent, is a "general guardian" who can bring an action on their behalf. *Auboug v. Eyre Bus Serv., Inc.*, Civ. No. 20-389 (WSS), 2020 WL 7353401 at *1 (W.D. Pa. Dec. 15, 2020). But a non-attorney parent who brings an action on behalf of her minor child may not represent the child *pro se*. *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991). That is because when minors have "claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.* (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

Thus, while Stone may bring this action on behalf of her children and may proceed *pro se* on her own behalf (to the extent that she asserts her own individual claims), *see* 28 U.S.C. § 1654, as a non-attorney, she must have legal representation to pursue claims on behalf of J.S. and I.S. Because Stone cannot represent her children *pro se*, and she was unable to secure counsel for herself and her minor children, the Court considers whether to appoint *pro bono* counsel. *See Osei-Afriyie*, 937 F.2d at 883 (identifying available options a district court should consider after determining that a non-attorney parent cannot represent their minor children).

### B.    Appointment of *Pro Bono* Counsel

Under 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." The Court has discretion to appoint *pro bono* counsel for *pro se* litigants. *Tabron v. Grace*, 6 F.3d 147, 155-56 (3d Cir. 1993). In determining whether to appoint *pro bono* counsel, the Court engages in a

5

two-step analysis.  First, as a threshold matter, the Court considers the merits of plaintiffs' claims.  *Id.* at 155.  If the plaintiffs' claims have arguable merit in fact and law, the Court then considers the *Tabron* factors, a non-exhaustive list of additional factors, including: (i) the plaintiffs' ability to present their case; (ii) "the difficulty of the particular legal issues"; (iii) "the degree to which factual investigation will be required and the ability of the" plaintiffs "to pursue such investigation"; (iv) whether plaintiffs' "claims are likely to require extensive discovery and compliance with complex discovery rules"; (v) whether the "case is likely to turn on credibility determinations" or "will require testimony from expert witnesses"; and (vi) whether "counsel is easily attainable and affordable by the litigant."  *Id.* at 156-57 n.5.

After reviewing plaintiffs' complaint and the instant motion papers, the Court concludes that the administration of justice and fairness to the litigants counsels in favor of appointing *pro bono* counsel for Stone, J.S., and I.S.  All of plaintiffs' federal civil rights claims arise out of alleged racially discriminatory conduct, particularly toward J.S. and I.S.  While it is not clear whether Stone intends to pursue any individual claims on her own behalf, once counsel is appointed, plaintiffs may file a counseled amended complaint that clarifies which claims, if any, are Stone's, and which claims are asserted on behalf of J.S. and I.S.[3]

---

[3]    As noted, it is not clear which claims, if any, Stone intends to assert on her own behalf.  The Court notes that the majority, if not all, of the allegations in the complaint appear to arise out of conduct directed exclusively toward J.S. and. I.S.  Yet the relief sought in the complaint suggests that Stone may intend to assert claims on her own behalf.  *See* [Dkt. 1] at 2, 20-21 (identifying that Stone brings claims individually and seeks "parental damages").

Although it is early in the litigation, the complaint sets forth a raft of factual allegations that, if substantiated, may well support meritorious claims for relief.

The Court highlights two non-exclusive examples. Plaintiffs assert racial discrimination claims under both Title VI and the NJLAD because the school defendants created a racially hostile environment. Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Title VI prohibits intentional discrimination based on race in any program that receives federal funding." *Bridges ex rel. D.B. v. Scranton School Dist.*, 644 F. App'x 172, 179 (3d Cir. 2016) (citations omitted).

To state a claim of racial discrimination under Title VI, a plaintiff must allege that "there is racial or national origin discrimination" and that "the entity engaging in discrimination is receiving federal financial assistance." *Moore v. Solanco School Dist.*, 471 F. Supp. 640, 655 (E.D. Pa. 2020) (citations omitted). To recover under a race-based hostile environment theory, plaintiffs must show that "the funding recipient act[ed] with deliberate indifference and the harassment is so severe that it effectively bars the victim's access to an educational opportunity or benefit[.]" *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999). The funding recipient must have "actual knowledge" to be held liable for instances of racial harassment and their response to the discrimination must also be "clearly unreasonable in light of the known circumstances." *Id.* at 648-650.

7

Similarly, under the NJLAD, a plaintiff must establish the following elements: (1) the discriminatory conduct would not have occurred but for the student's race; (2) a reasonable student of the same age, maturity level, and race would consider the conduct sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment; and (3) the school district failed to reasonably address such conduct. *L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ.*, 915 A.2d 535, 547 (citing *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993)).

Second, plaintiffs bring a claim under 42 U.S.C. § 1983, asserting that the school defendants violated their rights under the Fourteenth Amendment's Equal Protection Clause.[4]  [Dkt. 1] at 15.  Based on the complaint's allegations, potentially viable and meritorious theories that J.S. and I.S. could raise under the Fourteenth Amendment's Equal Protection Clause are: (1) deliberate indifference to student-on-student harassment; and (2) discriminatory application of facially neutral disciplinary policies that are applied differently on the basis of race.

First, as to student-on-student harassment, plaintiffs identify numerous instances of alleged race-based harassment from other students and appear to assert that the school was deliberately indifferent to that harassment.  There is no Third Circuit precedent on whether a student's rights under the Fourteenth Amendment's Equal Protection Clause are violated when a school or school district is deliberately indifferent to student-on-student racial harassment.  *Compare*

---

[4]      Stone asserts other claims for relief under § 1983.  The Court highlights only one and does not address all others raised in the complaint.

*George v. Bd. of Educ. of the Twp. of Millburn*, 34 F. Supp. 3d 442, 460 (adopting the Second Circuit's holding in *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140-41 (2d Cir. 1999) that "in certain circumstances, school administrators can be liable under the Fourteenth Amendment for deliberate indifference to student-on-student racial harassment."); *Dickerson v. Wallkill Valley Reg'l High Sch. Bd. of Educ.*, Civ. No. 19-8450 (KSH), 2020 WL 2847757, at *4-5 (D.N.J. June 1, 2020) (same); *Williams v. Jersey Shore Area Sch. Dist.*, 673 F. Supp. 3d 688, 700 (D.N.J. 2023) (same), *with Joyce v. Sea Isle City*, Civ. No. 4-5345 (RBK), 2008 WL 906266, at *17-18 (D.N.J. July 23, 2008) (relying on *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1369-73 (3d Cir. 1992) in determining that the Fourteenth Amendment does not impose a duty on schools to protect students from student-on-student harassment ).

Second, J.S. and I.S. could argue that defendants have violated their rights under the Equal Protection Clause because school officials themselves discriminated against them on the basis of race by disciplining white and black students differently in comparable situations. *See generally Yick Wo v. Hopkins*, 118 U.S. 356, 368-374 (1886). Specifically, plaintiffs allege that school officials engaged in retaliatory discipline by suspending J.S., a black student, for alleged bullying, while foregoing discipline for white students for the same or worse conduct. If plaintiffs' factual allegations are substantiated, then they have an arguably meritorious claim under the Equal Protection Clause.

9

In sum, the allegations here include race-based bullying, discrimination, and retaliation directed toward J.S. and I.S. while they attended Holmdel schools and played HYAA youth basketball. The complaint alleges that Holmdel schools received federal funding as required by Title VI, and further alleges that the schools engaged in racial discrimination by creating a racially hostile environment that effectively barred J.S. and I.S.'s access to an educational opportunity or benefit. There are also allegations that the school was deliberately indifferent to the student-on-student racial harassment that J.S. and I.S. endured while enrolled in Holmdel schools, and that school officials themselves directly discriminated against J.S. and I.S. on the basis of race. Based on these allegations (if proven), the Court concludes that J.S. and I.S. may have meritorious claims that warrant the assistance of qualified counsel.

As to the *Tabron* factors, the complaint's allegations are serious and will likely require extensive discovery, factual investigation, and implicate credibility determinations. The legal issues on some of J.S.'s and I.S.'s claims may be particularly difficult given the claims asserted and the lack of binding circuit precedent on whether J.S. and I.S.'s rights under the Equal Protection Clause have been violated as a result of student-on-student racial harassment. As to their ability to retain counsel, both J.S. and I.S. are minors, and the complaint explains that Stone previously sought counsel, but was unable to retain counsel for reasons unrelated to the merits of the case. Further, because Stone is not an attorney, she may not represent her minor children *pro se*. *Osei-Afriyie*, 937 F.2d at 882-83.

Thus, to ensure "their rights may be fully protected[,]" J.S. and I.S. require the assistance of counsel. *Id.*

Accordingly, after careful consideration of the arguable merit of plaintiffs' claims, the *Tabron* factors, and the circumstances presented, the Court exercises its discretion to appoint *pro bono* counsel for Stone, J.S., and I.S. in this action.

## III.    CONCLUSION

**IT IS** on this **13th** day of **March**, **2026**,

**ORDERED** that plaintiffs' motion for appointment of counsel (embedded in their motion for miscellaneous relief) [Dkt. 2] is **GRANTED**; and it is further

**ORDERED** that the Clerk shall appoint an attorney from the Civil *Pro Bono* Panel pursuant to Appendix H of the Local Civil Rules; and it is further

**ORDERED** that no later than 21 days after appointed counsel's appearance, all counsel shall meet and confer, and no more than 14 days thereafter, file a joint letter via CM/ECF that sets forth a proposed pretrial schedule through dispositive motion practice, including whether further briefing or action is necessary or appropriate for the pending and fully briefed motions to dismiss [Dkts. 11, 13]. The schedule shall afford sufficient time for plaintiffs to file an amended complaint with counsel's assistance. The Court will take appropriate action upon receipt of that letter; and it is further

11

12

**ORDERED** that all other relief sought in plaintiffs' motion for miscellaneous

relief is **DENIED** without prejudice.

_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

12